THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* SALVADOR SUAZO, Defendant and Appellant.

No. 10457. Argued June 16, 1944.—Decided July 3, 1944.

870

*Angel M. Villamil* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

This is an appeal from a judgment of the district court sentencing the defendant to a twenty-five dollar fine for violation of Act No. 131, Laws of P. R., 1943 (p. 404), known as the Civil Rights Act of Puerto Rico. The defendant raises two questions of law: (1) he contends that the complaint does not allege sufficient facts to charge a violation of law; and (2) he asserts that the Civil Rights Act is unconstitutional.

The complaint was filed originally in the municipal court. It was sworn to by an Assistant District Attorney of San Juan and alleges that the crime was committed in the following manner: ''That on August 14, 1943, and in the ward of Santurce, of the Judicial Municipal District of San Juan, P. R., which forms part of the Judicial District of San Juan, P. R., the defendant Salvador Suazo, illegally, voluntarily and maliciously, and acting on said date as owner and manager of the public business El Esquife, located in said ward of Santurce, denied entrance and equal treatment to said Esquife Club to the following persons: Paula G. de Muriel, Mr. and Mrs. Jorge Haddock, Lt. Rafael A. Muriel and Capt. and Mrs. Rafael Pérez García, the aforesaid Salvador Suazo alleging that he denied entrance and equal treatment to said persons because they belonged to the negro race, and owing to the attitude of said Salvador Suazo, the aforementioned persons could not enter the Esquife Club on said date. Said action is contrary to Act No. 131, of 1943, §1, par. 'A'.''

The defendant contends that to allege that the defendant was acting as owner and manager "of the public business El Esquife" does not spell out a violation of §1 of Act No. 131.[1] His position is that the phrase "public business" is a conclusion of law, not an allegation of fact, and that, to state an offense under this Act, it is necessary to allege specifically and in detail exactly which type of "public business" is being operated, in order to determine if the said violation has occurred. To sustain this argument, the defendant asserts that §6(2) of the Act[2] includes all the types of public places and businesses to which the Act applies; that the allegation in the complaint that El Esquife is a club does not state an offense, as §6(2) makes no mention of clubs; and that as a matter of common knowledge a club is private, not public, and is restricted to its members, a fact which motivated the Legislature, very properly, to leave clubs outside the scope of the statute.

It can be admitted at once that the complaint is not well-drawn, particularly as it was prepared by an Assistant District Attorney, and not by a layman. Nevertheless, we are satisfied that, read as a whole, it states an offense under Act No. 131. In the first place, the defendant, in demurring to the complaint, accepted its allegations as true. And those

[1] That Section reads in part as follows:

"Section 1.—(a) No person shall be denied in the Island of Puerto Rico any access, service and like treatment in public places and businesses and in the means of transportation because of any political, religious, race, or color question, or because of any other reason not applicable to all persons in general."

[2] Section 6 (2) reads as follows:

"The phrases 'place of public accomodation' and 'public business' shall, among others, mean auditoriums, assembly rooms, and other places of public meeting; barber shops, cafes, concert halls, pastry shops, department stores and all wholesale houses, stores, and factories where foodstuffs, medicines, beverages, provisions, merchandise, or services are sold or offered, advertised, or displayed for sale to the public; parks, stadiums and every other place of amusement and recreation; elevators, dining rooms, hotels, eating houses, inns, theatres, athletic fields, gymnasiums, places where sporting events or competitions are held, and any other place where merchandise, services, or amusements are offered to the public."

allegations are couched in the language of the statute, which prohibits such discrimination in "public places and businesses". It can be readily admitted that the defendant could have obtained a bill of particulars. But, in the light of the definitions of "public business" found in §6(2), he cannot simply attack the complaint as such. In a similar situation, we recently said: "Therefore, when in the information which followed the wording of the statute it was stated that the accused ' . . . illegally, voluntarily, maliciously, and criminaly had in his possession and was carrying a firearm without having declared the possession thereof . . . ', 'firearm' meant exactly what the Act intended it to mean, that is, a pistol, revolver, shotgun, or rifle of the same species as specified in the first Section. If the accused needed a more specific description of the weapon, he could have asked the court that the same be given to him, as it was resolved in the case of *People* v. *Avilés, supra,* and ratified in the case of *People* v. *Rodríguez, supra,* but at this time he cannot successfully raise the issue that the information did not charge him with the commission of a crime." (*People* v. *Candelaria,* 60 P.R.R. 610, 612).

The argument of the defendant that the allegation that the defendant was operating a club means that this was a private club, which is not included in the definitions of "public business" found in §6(2), loses sight of the fact that the complaint also alleges that this club is a "public business". A club operated as a public business must necessarily be "a place of amusement and recreation", or a "place where . . . amusements are offered to the public". (Section 6(2).)

We are unable to follow the defendant in his argument that Act No. 131 is unconstitutional in that it impairs his rights under the Fourteenth Amendment. If anything, this and similar state statutes seek to implement and reinforce the rights conferred by that amendment. Indeed, the

state in such statutes is merely prohibiting the persons affected thereby from doing what the state itself is prohibited from doing under the Fourteenth Amendment. As pointed out in the Annotation on "Constitutionality of 'civil rights' legislation by state," 49 A.L.R. 505, "As long ago as 1889, it was declared that the power of the legislature to enact a civil rights statute 'as to all kinds of business, of a public or quasi public character, conducted for the accommodation, refreshment, amusement, or instruction of the public, which the state has the right to regulate under its police power, so that all classes of citizens may enjoy the benefit thereof without unjust discrimination, is no longer open to discussion.' *Rhone* v. *Loomis* (1898) 74 Minn. 200, 77 N. W. 31." To this effect, see cases in said Annotation and also cases cited in footnote 7, 10 American Jurisprudence 902.

The judgment of the district court will be affirmed.